UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal No. 4:20-CR-00174 |
| | ) | |
| v. | ) | |
| | ) | **PLEA AGREEMENT** |
| OSMAN RASHID JAMA, | ) | |
| | ) | |
| Defendant. | ) | |

The United States of America (also referred to as "the Government"), Defendant, OSMAN RASHID JAMA, and Defendant's attorney, enter into this Plea Agreement.

**A.    CHARGES**

1.    Subject Offense.    Defendant will waive Indictment (by executing a separate waiver of Indictment form) and plead guilty to Count 1 of an United States Attorney's Information charging a violation of Title 18, United States Code, Sections 1343 and 1349, that is Conspiracy to Commit Wire Fraud.    Defendant also agrees to forfeiture of the money and property listed in paragraphs 24 and 25 of this Plea Agreement.

2.    No Charges to be Dismissed.    There are no charges to be dismissed.

3.    No Further Prosecution.    The Government agrees that Defendant will not be charged in the Southern District of Iowa with any other federal criminal offenses arising from or directly relating to this investigation.    This paragraph and this Plea Agreement do not apply to (1) any criminal act occurring after the date of this agreement; (2) any crime of violence; or (3) any criminal offense which Defendant

1

did not fully disclose to law enforcement during Defendant's interviews pursuant to any proffer or other agreements with the United States.

**B.    MAXIMUM PENALTIES**

4.    <u>Maximum Punishment</u>.    Defendant understands that the crime to which Defendant is pleading guilty carries a maximum sentence of 20 years in prison; a maximum fine of $250,000; and a term of supervised release of not more than 5 years.   A mandatory special assessment of $100 per count must also be imposed by the Court.

5.    <u>Supervised Release--Explained</u>.    Defendant understands that, during any period of supervised release or probation, Defendant will be under supervision and will be required to comply with certain conditions.   If Defendant were to violate a condition of supervised release, Defendant could be sentenced to not more than three (3) years in prison, without any credit for time previously served.

6.    <u>Detention</u>.    Provided that Defendant does not violate any conditions of Defendant's pretrial release, and does not appear to be mentally at risk to harm himself or any other person, the Government agrees to recommend that Defendant may remain on pretrial release pending imposition of sentence.

**C.    NATURE OF THE OFFENSE – FACTUAL BASIS**

7.    <u>Elements Understood</u>.    Defendant understands that to prove the offense alleged under **Count 1 (Conspiracy to Commit Wire Fraud)**, the

Government would be required to prove beyond a reasonable doubt the following elements:

<u>Conspiracy</u>

    (a)    That two or more persons conspired or agreed to commit the crime of Wire Fraud; and

    (b)    The Defendant knowingly and voluntarily joined the conspiracy.

<u>Wire Fraud</u>

    (a)    The Defendant knowingly devised and executed a scheme to defraud and obtain money from the USDA by means of materially false and fraudulent pretenses, representations, and promises;

    (b)    The Defendant acted with the intent to defraud; and

    (c)    The Defendant used, or caused another person to use, interstate wire communications facilities in furtherance of, or in an attempt to carry out, some essential step in the scheme.

8.    <u>Factual Stipulations</u>. Attached hereto as Attachment "A", and incorporated by reference herein, are factual stipulations entered into between the parties, including the factual stipulations of Defendant's offense conduct relating to the subject offense. Defendant acknowledges that these statements are true.

9.    <u>Truthfulness of Factual Basis</u>.  Defendant understands that, during the change of plea hearing, the judge and the prosecutor may ask Defendant questions under oath about the offense to which Defendant is pleading guilty, in the presence of Defendant's attorney. Defendant understands that Defendant must answer these questions truthfully, and that Defendant can be prosecuted for perjury if Defendant gives any false answers.

10.    <u>Waiver of Rule 410 Rights</u>.  Defendant expressly waives Defendant's rights under Rule 410 of the Federal Rules of Evidence and agrees that all factual statements made in this plea agreement, including under the Factual Basis or Attachment A, are admissible against Defendant. Should Defendant fail to plead guilty pursuant to this plea agreement or move to withdraw his plea or to set aside Defendant's conviction, then these admissions may be used against Defendant in the Government's case-in-chief and otherwise, including during the continuing prosecution of this case.

16.    <u>Venue</u>.  Defendant agrees that venue for this case is proper for the United States District Court for the Southern District of Iowa.

**D.    SENTENCING**

17.    <u>Sentencing Guidelines</u>.    Defendant understands that Defendant's sentence will be determined by the Court after considering the advisory United States Sentencing Guidelines, together with other factors set forth by law.   The Sentencing Guidelines establish a sentencing range based upon factors determined to be present in the case, which include, but are not limited to the following:

(a)    The nature of the offense to which Defendant is pleading guilty, with the parties stipulating as a recommendation to the District Court that a base offense level of 7 applies pursuant to USSG § 2B1.1(a)(1);

(b)    The loss amount, with the parties stipulating as a recommendation to the District Court that the loss exceeded $550,000 but was not more than $3,500,000, such that either a 14 or 16 level increase in the offense level applies pursuant to USSG § 2B1.1(b)(1);

4

(c)     Whether sophisticated means were used to commit all or part of the offense;

(d)     Defendant's role in the offense;

(e)     Whether Defendant attempted to obstruct justice in the investigation or prosecution of the offense;

(f)     The nature and extent of Defendant's criminal history (prior convictions); and

(g)     Acceptance or lack of acceptance of responsibility.

Defendant understands that, under some circumstances, the Court may "depart" or "vary" from the Sentencing Guidelines and impose a sentence more severe or less severe than provided by the guidelines, up to the maximum in the statute of conviction.   Defendant has discussed the Sentencing Guidelines with Defendant's attorney.

18.     Acceptance of Responsibility.   The Government agrees to recommend that Defendant receive credit for acceptance of responsibility under USSG §3E1.1. The Government reserves the right to oppose a reduction under §3E1.1 if after the plea proceeding Defendant obstructs justice, fails to cooperate fully and truthfully with the United States Probation Office, attempts to withdraw Defendant's plea, or otherwise engages in conduct not consistent with acceptance of responsibility.   If the base offense level is 16 or above, as determined by the Court, the Government agrees that Defendant should receive a 3-level reduction, based on timely notification to the Government of Defendant's intent to plead guilty.

19.     Presentence Report.   Defendant understands that the Court may defer

5

a decision as to whether to accept this Plea Agreement until after a Presentence Report has been prepared by the United States Probation Office, and after Defendant's attorney and the Government have had an opportunity to review and challenge the Presentence Report.   The parties are free to provide all relevant information to the Probation Office for use in preparing a Presentence Report.

20.   <u>Disclosure of Presentence Investigation Reports</u>. The United States District Court for the Southern District of Iowa has issued the following Administrative Order:

> The presentence investigation report is a sealed and confidential document. Unless specifically authorized by the district court, a defendant may not disseminate, disclose, or distribute a presentence investigation report, or any part or page of a presentence investigation report, in either draft or final form. A defendant who violates this order, may be subject to prosecution for contempt of court under 18 U.S.C. § 401(3). This order does not apply to a defendant's review of a presentence investigation report with the defendant's own attorney.

Defendant acknowledges and understands this order.

21.   <u>Evidence at Sentencing</u>.   The parties may make whatever comment and evidentiary offer they deem appropriate at the time of sentencing and entry of plea, provided that such offer or comment does not violate any other provision of this Plea Agreement.   Nothing in this Plea Agreement restricts the right of Defendant or any victim to make an allocution statement, to the extent permitted under the Federal Rules of Criminal Procedure, nor does this Plea Agreement convey any rights to appear at proceedings or make statements that do not otherwise exist.

22.   <u>Sentence to be Decided by Judge -- No Promises</u>.   This Plea Agreement is entered pursuant to Rule 11(c)(1)(A) and (c)(1)(B) of the Federal Rules of Criminal

Procedure.   Defendant understands that the final sentence, including the application of the Sentencing Guidelines and any upward or downward departures, is within the sole discretion of the sentencing judge, and that the sentencing judge is not required to accept any factual or legal stipulations agreed to by the parties.   Any estimate of the possible sentence to be imposed, by a defense attorney or the Government, is only a prediction, and not a promise, and is not binding.   Therefore, it is uncertain at this time what Defendant's actual sentence will be.

23.   <u>No Right to Withdraw Plea</u>.   Defendant understands that Defendant will have no right to withdraw Defendant's plea if the sentence imposed, or the application of the Sentencing Guidelines, is other than what Defendant anticipated, or if the sentencing judge declines to follow the parties' recommendations.

7

E.     FINES, COSTS, FORFEITURE AND RESTITUTION

24.     <u>Forfeiture</u>.   Defendant agrees to forfeiture of the property listed below. Defendant will execute any documents as directed by the Government to complete the forfeiture.

a.   $47,932.86, seized from Veridian Credit Union Member Accounts XXX7500-1 and XXX7500-2 (MidCity Halal Food Market d/b/a International Food Market), pursuant to 4:19-MC-016.

b.   $9,405, seized from Veridian Credit Union Member Accounts XXX7980-1 and XXX980-2 (Osman Rashid Jama), pursuant to 4:19-MC-016.

c.   $596.09, seized from Veridian Credit Union Member Account XXX2240-1 (Osman Rashid Jama), pursuant to 4:19-MC-016.

d.   $51,994.88, seized from Veridian Credit Union Member Account XXX6600-2 (Muhubo Abdulahi, Defendant's wife), pursuant to 4:19-MC-016.

e.   Total of $170,770 in cash seized from the residence of Ibrahim Farah at a known address in Des Moines, Iowa.

f.   Total of $49,000 in cash seized from Defendant's residence at a known address in Windsor Heights, Iowa.

g.   Total of $7,070 in cash seized from International (2720 Douglas Avenue).

25.     <u>Forfeiture of Real Estate</u>.     Defendant agrees to the immediate forfeiture of certain real estate listed in Case No. 4:19-CV-00126, namely the properties located at 1724 63rd Street, Windsor Heights, Polk County, Iowa, and 1219 15th Street, Des Moines, Polk County, Iowa.   Defendant does not agree to the

forfeiture of the property located at 6423 Northwest Drive, Windsor Heights, Polk County Iowa. Defendant further agrees, within 30 days of the filing of this Plea Agreement, to execute any and all paperwork as directed by the Government for the purpose of forfeiting Defendant's interest in these properties.

26. <u>Waivers Regarding Forfeiture</u>.   Defendant waives all constitutional and statutory challenges in any manner (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds.   Defendant further agrees that the forfeiture provisions of this Plea Agreement are intended to, and will, survive Defendant notwithstanding the abatement of any underlying criminal conviction after execution of this Plea Agreement.   The forfeitability of any particular property pursuant to this agreement shall be determined as if Defendant had survived and that determination shall be binding upon Defendant's heirs, successors and assigns until the agreed forfeiture, including any agreed money judgment amount, is collected in full.

27. <u>Consent to Judgment of Forfeiture</u>.   Defendant agrees to waive all interest in assets subject to this Plea Agreement in any administrative or judicial forfeiture proceeding, whether criminal or civil, state or federal.   Defendant agrees to consent to the entry of orders of forfeiture for such property and waives the requirements of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment.   Defendant understands that the forfeiture of assets is part of the sentence that may be imposed

in this case.

28.   <u>Fines and Costs</u>.   Issues relating to fines and/or costs of incarceration are not dealt with in this agreement, and the parties are free to espouse their respective positions at sentencing.

29.   <u>Special Assessment</u>.   Defendant agrees to pay the mandatory special assessment of $100 ($100 per count) at or before the time of sentencing, as required by 18 U.S.C. § 3013.

30.   <u>Restitution</u>.   Defendant agrees that the Court should impose an order of restitution in the amount of at least: (1) **$550,000** for WIC benefits unlawfully obtained, payable to the Iowa Department of Public Health; and (2) at least **$12,318.31** for SNAP benefits unlawfully obtained, payable to the Iowa Department of Human Service. Defendant agrees that the Court may reduce this restitution award at the time of sentencing by the amount of restitution the State of Iowa and/or the USDA has received from WIC and/or SNAP beneficiaries. Defendant agrees that such order of restitution shall be due and payable immediately; and that if Defendant is not able to make full payment immediately, Defendant shall cooperate with the United States Probation Office in establishing an appropriate payment plan, which shall be subject to the approval of the Court, and thereafter in making the required payments.  Any such payment plan does not preclude the Government from utilizing any collections procedures pursuant to the Federal Debt Collections Act and including the Treasury offset program.

31.   <u>Financial Statement</u>.   Defendant agrees to complete truthfully and in

full a financial statement provided by the U.S. Attorney's Office, and return the financial statement to the U.S. Attorney's Office within 30 days of the filing of this Plea Agreement.

## F.     LIMITED SCOPE OF AGREEMENT

32.     Limited Scope of Agreement.   This Plea Agreement does not limit, in any way, the right or ability of the Government to investigate or prosecute Defendant for crimes occurring outside the scope of this Plea Agreement.   Additionally, this Plea Agreement does not preclude the Government from pursuing any civil or administrative matters against Defendant, including, but not limited to, civil tax matters and civil forfeiture which arise from, or are related to, the facts upon which this investigation is based.

33.     Agreement Limited to Southern District of Iowa.   This Plea Agreement is limited to the United States Attorney's Office for the Southern District of Iowa, and cannot bind any other federal, state or local prosecuting, administrative, or regulatory authorities.

34.     Victims not a party to this Agreement.   Defendant understands that the United States Department of Agriculture and the State of Iowa are not parties to this Plea Agreement, and that the "loss" and "restitution" amounts applicable to this criminal case do not resolve any claims that they may have against Defendant. Defendant understands that they remains free to pursue all lawful civil remedies they may deem appropriate.

11

**G.   WAIVER OF TRIAL, APPEAL AND POST-CONVICTION RIGHTS**

35.   <u>Trial Rights Explained</u>.   Defendant understands that this guilty plea waives the right to:

<ol>
<li>(a)   Continue to plead not guilty and require the Government to prove the elements of the crime beyond a reasonable doubt;</li>

<li>(b)   A speedy and public trial by jury, which must unanimously find Defendant guilty before there can be a conviction;</li>

<li>(c)   The assistance of an attorney at all stages of trial and related proceedings, to be paid at Government expense if Defendant cannot afford to hire an attorney;</li>

<li>(d)   Confront and cross-examine adverse witnesses;</li>

<li>(e)   Present evidence and to have witnesses testify on behalf of Defendant, including having the Court issue subpoenas to compel witnesses to testify on Defendant's behalf;</li>

<li>(f)   Not testify or have any adverse inferences drawn from the failure to testify (although Defendant also has the right to testify, if Defendant so chooses); and</li>

<li>(g)   If Defendant is convicted, the right to appeal, with the assistance of an attorney, to be paid at Government expense if Defendant cannot afford to hire an attorney.</li>
</ol>

36.   <u>Waiver of Appeal and Post-Conviction Review</u>.   Defendant knowingly and expressly waives any and all rights to appeal Defendant's conviction in this case, including a waiver of all motions, defenses and objections which Defendant could assert to the charge(s), or to the Court's entry of judgment against Defendant; except that both Defendant and the United States preserve the right to appeal any sentence imposed by the Court, to the extent that an appeal is authorized by law.   Also,

12

Defendant knowingly and expressly waives any and all rights to contest Defendant's conviction and sentence in any post-conviction proceedings, including any proceedings under 28 U.S.C. § 2255. These waivers are full and complete, except that they do not extend to the right to appeal or seek post-conviction relief based on grounds of ineffective assistance of counsel or prosecutorial misconduct.

## H.   VOLUNTARINESS OF PLEA AND OPPORTUNITY TO CONSULT WITH COUNSEL

37.   <u>Voluntariness of Plea</u>.   Defendant represents that Defendant's decision to plead guilty is Defendant's own, voluntary decision, and that the following is true:

(a)   Defendant has had a full opportunity to discuss all the facts and circumstances of this case with Defendant's attorney, and Defendant has a clear understanding of the charges and the consequences of this plea, including the maximum penalties provided by law.

(b)   No one has made any promises or offered any rewards in return for this guilty plea, other than those contained in this written agreement.

(c)   No one has threatened Defendant or Defendant's family to induce this guilty plea.

(d)   Defendant is pleading guilty because in truth and in fact Defendant is guilty and for no other reason.

38.   <u>Consultation with Attorney</u>.   Defendant has discussed this case and this plea with Defendant's attorney and states that the following is true:

(a)   Defendant states that Defendant is satisfied with the representation provided by Defendant's attorney.

(b)   Defendant has no complaint about the time or attention Defendant's attorney has devoted to this case nor the advice the attorney has given.

(c)     Although Defendant's attorney has given Defendant advice on this guilty plea, the decision to plead guilty is Defendant's own decision. Defendant's decision to enter this plea was made after full and careful thought, with the advice of Defendant's attorney, and with a full understanding of Defendant's rights, the facts and circumstances of the case, and the consequences of the plea.

## I.   GENERAL PROVISIONS

39.     Entire Agreement.   This Plea Agreement, and any attachments, is the entire agreement between the parties.   Any modifications to this Plea Agreement must be in writing and signed by all parties.

40.     Public Interest.   The parties state this Plea Agreement is in the public interest and it takes into account the benefit to the public of a prompt and certain disposition of the case and furnishes adequate protection to the public interest and is in keeping with the gravity of the offense and promotes respect for the law.

41.     Execution/Effective Date.   This Plea Agreement does not become valid and binding until executed by each of the individuals (or their designated representatives) shown below.

42.     Consent to Proceed by Video Conferencing.   Defendant consents to any proceedings in this case, to include plea and sentencing proceedings, being conducted by video or telephone technology, if the Court finds further delay would seriously harm the interests of justice.   Defendant has had the opportunity to consult with Defendant's attorney about the use of video or telephone technology in this case.

14

## J.   SIGNATURES

43.   Defendant.  I have read all of this Plea Agreement and have discussed it with my attorney.   I fully understand the Plea Agreement and accept and agree to it without reservation.   I do this voluntarily and of my own free will.   No promises have been made to me other than the promises in this Plea Agreement.   I have not been threatened in any way to get me to enter into this Plea Agreement.   I am satisfied with the services of my attorney with regard to this Plea Agreement and other matters associated with this case.   I am entering into this Plea Agreement and will enter my plea of guilty under this Agreement because I committed the crime to which I am pleading guilty.   I know that I may ask my attorney and the judge any questions about this Plea Agreement, and about the rights that I am giving up, before entering into the plea of guilty.

01/20/21
Date

_____
Osman Rashid Jama

44.   Defendant's Attorney.  I have read this Plea Agreement and have discussed it in its entirety with my client.   There is no Plea Agreement other than the agreement set forth in this writing.   My client fully understands this Plea Agreement.   I am satisfied my client is capable of entering into this Plea Agreement, and does so voluntarily of Defendant's own free will, with full knowledge of Defendant's legal rights, and without any coercion or compulsion.   I have had full access to the Government's discovery materials, and I believe there is a factual basis for the plea.   I concur with my client entering into this Plea Agreement and in

15

entering a plea of guilty pursuant to the Plea Agreement.

01.22.2021
---
Date

*Alfredo Parrish*

Alfredo Parrish
Attorney for Osman Rashid Jama

2910 Grand Avenue
Des Moines, Iowa 50312
Telephone: 515-284-5737
Telefax: 515-284-1704
E-Mail: aparrish@ParrishLaw.com

45.   <u>United States</u>.   The Government agrees to the terms of this Plea Agreement.

Richard D. Westphal
Acting United States Attorney

1/23/2021
---
Date

By:   */s/ Virginia M. Bruner*

Virginia M. Bruner
Assistant U.S. Attorney
U.S. Courthouse Annex, Suite 286
110 East Court Avenue
Des Moines, Iowa 50309
Telephone: 515-473-9300
Telefax: 515-473-9292
E-mail: Virginia.Bruner@usdoj.gov

Attachment "A"

STIPULATION OF FACTS

SNAP and WIC Scheme: Fraudulent Transactions at International

1.    Defendant was the owner and President of MidCity Halal Food Market Inc., d/b/a International Food Market (International) at all relevant times. International was located in Des Moines, Iowa, and was licensed by the State of Iowa as a retail food establishment, or grocery store.

2.    International was authorized to accept Supplemental Nutrition Assistance program (SNAP) benefits and began conducting SNAP transactions on or about April 2015. International was authorized to accept Women, Infants, and Children (WIC) benefits and began conducting WIC transactions on or about May 2016. International remained an authorized SNAP and WIC approved vendor through at least April 18, 2019.

3.    SNAP and WIC benefits can only be used to purchase certain eligible food items. SNAP and WIC benefits were funded through the United States Department of Agriculture (USDA) through its Food and Nutrition Services Agency. Within Iowa, the Iowa Department of Public Health (IDPH) serves as the administering agency for the WIC program, and the State of Iowa Department of Human Services administers the SNAP program.

4.    Defendant was trained in the rules and regulations for both the SNAP and WIC programs. Defendant knew what items could and could not be purchased with SNAP and WIC benefits. Defendant knew that it was illegal to give recipients unapproved items, cash, or credit in exchange for SNAP and WIC benefits.

5.    As a participating food retailer in the SNAP and WIC programs, International had on its premises a computerized Electronic Benefit Terminal (EBT) or "point of sale" (POS) device to process electronic benefit transactions under the SNAP and WIC programs.

6.    From at least in or about January 2017 and continuing through in or about April 18, 2019, Defendant devised a scheme to defraud the USDA by directly purchasing SNAP and/or WIC benefits from the SNAP and/or WIC recipients/beneficiaries in violation of program regulations.

7.    Defendant, and others at his direction, scanned SNAP and WIC recipients' EBT cards at International's POS terminal. Defendant, and others at his direction, scanned UPS bar codes for WIC and SNAP approved items. Instead of giving the recipient the WIC and/or SNAP approved item, Defendant, and others at

17

his direction, at various times gave recipients non-approved items, store credit, and cash.

8.    Defendant also kept recipients' EBT cards, and their personal identification numbers (PINs), and scanned those EBT cards when the recipients were not present, knowing that was in violation of the SNAP and WIC rules.

9.    Defendant profited from the scheme by giving SNAP and/or WIC recipients cash, and/or non-eligible food items for their benefits from SNAP and/or WIC for less than their full value, and then obtained their full value from FNS by fraudulently processing the transactions through the POS device at International, as though Defendant had sold eligible food items to the SNAP and/or WIC recipients at International and was eligible for reimbursement.

10.    For example, from May 2018 through August 2018, Defendant caused to be scanned an EBT card on eleven occasions. Each time the EBT card was scanned by International's POS terminal, WIC funds were depleted from the recipient's account and a wire transfer was initiated from outside the state of Iowa to International's bank account, over which Defendant had custody and control. A total of approximately .$1,716.52 was charged to the EBT card over those eleven transactions. In return, the recipient was provided with $40 in cash, a blanket, a kettle, and $100 in 'store credit' at International

11.    Defendant either conducted the above-described fraudulent SNAP and/or WIC transactions himself or had employees and others at his direction, including his father, Ibrahim Farah, conduct them while acting under Defendant's direction.

12.    For purposes of executing the scheme, Defendant transmitted, and caused to be transmitted in interstate commerce, certain writings, signs, signals and sounds. Each of the fraudulent transactions required the electronic transmission of data between the state of Iowa and another state.

13.    When Defendant and his employees acting under his direction conducted themselves, as described above, Defendant knew that federal law prohibited the sale of SNAP and/or WIC benefits for cash and fraudulently disguised the purchase of SNAP and/or WIC benefits as the purchase of eligible food items.

14.    For purposes of this plea agreement and for sentencing, the parties stipulate that Defendant fraudulently obtained at least **$550,000** in WIC benefits and some amount of SNAP benefits, as a result of the above-referenced scheme.

Proceeds of the Fraud

15.    Defendant caused to be transmitted fraudulently obtained SNAP and

18

WIC benefits to International's bank account. On or about March 30, 2016, membership number/account number XXX7500 was opened at Veridian Credit Union in the name of MidCity Halal Food Market d/b/a International Food Market. Defendant was at all relevant times an authorized signor on the International account (XXX7500). International's Veridian Credit Union account (XXX7500) had two subaccounts. The first was a savings account (XXX7500-1) and the second was a checking account (XXX7500-2). WIC and SNAP proceeds were remitted into International's checking account (XXX7500-2) on a near-daily basis from May 19, 2016 (WIC) and April 13, 2016 (SNAP) until at least April 18, 2019.

16.    Defendant caused to be transferred fraudulent WIC and SNAP funds from International's Checking Account (XXX7500-2) to the following Veridian Credit Union accounts. Funds in those accounts on or about April 18, 2019, included fraudulently obtained WIC and SNAP funds:

    a.  Veridian Credit Union Member Accounts XXX7500-1 and XXX7500-2 (International's Business Accounts).

    b.  Veridian Credit Union Member Accounts XXX7980-1 and XXX7980-2 (Defendant's Personal Accounts).

    c.  Veridian Credit Union Member Account XXX2240-1 (Defendant's Personal Savings Account).

    d.  Veridian Credit Union Member Account XXX6600-2 (Defendant's wife's Muhubo Abdulahi's Personal Checking Account)

17.    On or about April 17, 2017, Defendant purchased real property located at 1724 63rd Street, Windsor Heights, Iowa 50324. Defendant purchased this property with fraudulently obtained WIC and SNAP proceeds.

18.    On or about August 28, 2018, Defendant purchased real property located at 1219 15th Street, Des Moines, Iowa, 50314. Defendant purchased this property with fraudulently obtained WIC and SNAP proceeds.

19.    On or about March 22, 2019, Defendant purchased real property located at 6423 Northwest Drive, Windsor Heights, IA 50324. Defendant purchased this property with fraudulently obtained WIC and SNAP proceeds.

SNAP Scheme: Sam's Club

20.    From January 2016 through March 2019, Defendant used SNAP EBT cards that belonged to other individuals who were not a part of his family or household to make purchases on his International Sam's Club account. Defendant purchased food items at Sam's Club using these other individuals' SNAP EBT cards,

and used the food items to stock his store, for further resale.

21.    As a result of the above-described scheme, Defendant fraudulently obtained an additional **$12,318.31** in SNAP benefits.

Summary

22.    Defendant hereby certifies that the facts set forth above are true and accurate to the best of Defendant's knowledge.

23.    Defendant agrees that one or more of the acts constituting the offense charged in Count 1 of the Information occurred in the Southern District of Iowa.

01/20/21
Date

Osman Rashid Jama
Defendant

01.22.2021
Date

Alfredo Parrish
Attorney for Osman Rashid Jama

Richard D. Westphal
Acting United States Attorney

1/23/2021
Date

By:  /s/ Virginia M. Bruner

Virginia M. Bruner
Assistant United States Attorney

20